IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LINDA L. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:21-cv-00075-DGK |
| ) | |
| CADUCEUS OCCUPATIONAL ) | |
| MEDICINE, LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

This is an employment discrimination case brought by Plaintiff Linda Davis against Defendant Caduceus Occupational Medicine, LLC ("Caduceus"). Plaintiff's Complaint alleges racial discrimination (Count I), racial hostile environment (Count II), retaliation (Count III), and age discrimination (Count IV) claims. ECF No. 1.

On December 20, 2023, District Court Judge Howard Sachs granted summary judgment in favor of Defendant on all counts except retaliation. ECF No. 64. Judge Sachs denied summary judgment on the retaliation claim without prejudice after noting (1) *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011) (holding plaintiff could bring a third-party retaliation claim where his employer fired him shortly after his fiancée filed a sex discrimination charge against the employer) applied to the facts of this case; and (2) a question of fact "probably" exists regarding causation. Sachs' Order at 16, ECF No. 64. The case was subsequently reassigned to the undersigned for all further proceedings. Upon reviewing the record, this Court ordered the parties to re-brief summary judgment on the remaining retaliation claim. Order, ECF No. 66.

Now before the Court is Defendant's renewed motion for summary judgment on Plaintiff's remaining retaliation claim. ECF No. 67. Because Defendant has shown Plaintiff cannot prevail under the *McDonnell Douglas* burden shifting framework, the motion is GRANTED.

## Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must substantiate her allegations with "sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

## Undisputed Material Facts

As an initial matter, the parties did not tailor their renewed summary judgment briefing to the issue of retaliation as instructed by the Court. In fact, the parties' statement of facts have been copied and pasted from their original summary judgment briefing with minute changes. Defendant added only one proposed fact, *see* Df.'s Proposed Fact ¶63, ECF No. 68, and most of

Plaintiff's additional facts are irrelevant to the issue here, *see* Pl's. Proposed Facts ¶¶94–110, ECF No. 69. As such, the Court largely adopts the material undisputed facts outlined in Judge Sachs' previous summary judgment order, with a few changes. The Court notes the following about the statement of facts:

First, as Judge Sachs noted, the parties dispute many of the proposed facts. However, many of those "disputes" are immaterial or irrelevant to the issues raised. *See* Sachs' Order at 2. This is even more apparent in the renewed summary judgment briefing since the parties left in proposed facts pertaining to Plaintiff's discrimination claims, which are not at issue here. *See, e.g.*, Df.'s Proposed Facts ¶¶ 57–61; Pl.'s Proposed Facts ¶¶ 67, 70–72, 74, 77, 98, 106.

Second, the Court had particular difficulty parsing through Plaintiff's brief. Many of her responses to Defendant's proposed facts are lengthy objections in paragraph form with a string of citations dumped at the end. For instance, her response to Defendant's Proposed Fact 37 is nearly two full pages followed by a lengthy string cite. *See* Resp. to Df.'s Proposed Fact ¶37, ECF No. 69. Similar lengthy responses are given throughout her briefing. *Id.* ¶¶ 38–39, 43, 45, 47–49, 51, 55–56, 63. This violates the Local Rule concerning summary judgment briefing. *See* L.R. 56.1(b)(2) ("Each fact in dispute must be set forth in a separately numbered paragraph and properly supported in accordance with Fed. R. Civ. P. 56(c).").

Third, some of the parties' proposed facts are not supported by the cited testimony. *See, e.g.*, Pl.'s Proposed Fact ¶84 (cited testimony does not explain how this statement was an error). One such fact is particularly troubling because it is material to Plaintiff's retaliation claim: Plaintiff claims she was retaliated against, in part, because she refused to fire an employee named Kendra Davis. *See id.* ¶78. The cited testimony, however, does not indicate anyone directed Plaintiff to fire Kendra Davis at any point. *See* Pl.'s Dep. at 118:18-120:25, Ex. C, ECF No. 69.

This is a disingenuous reading of the testimony at best, and the Court ignores this proposed fact as a basis for Plaintiff's retaliation claim. Defendant's claim that Plaintiff sent a racist text message is similarly unsupported by the record. *See* Df.'s Proposed Fact ¶37. With that, the Court finds the material undisputed facts to be as follows.[1]

Caduceus is an occupational medicine practice based in Atlanta, Georgia. Dr. Stephen Dawkins—a black male—is the founder and owner. Sometime in 2018, Caduceus decided to expand into the Kansas City market. Dr. Dawkins hired Plaintiff—a white female—as the Director of Operations for the Kansas City area around that time. In her role, Plaintiff coordinated with and sought advice from Dominque Grant, who was the Director of Operations for Caduceus in the Atlanta area and who had similar responsibilities.

Caduceus employed Plaintiff's sister, Charmaine Wood ("Wood"), to perform marketing for it in Kansas City. On October 25, 2019, Caduceus fired Wood and sent an email to employees notifying them that Wood was no longer employed there. Dr. Dawkins made the decision to fire Wood. On January 23, 2020, Wood filed a charge with the Missouri Commission on Human Rights ("MCHR") and Equal Employment Opportunity Commission ("EEOC") alleging race, sex, and age discrimination against Caduceus.[2]

Sometime in November 2019, before Wood filed charges against Caduceus, Plaintiff claims Defense Counsel directed her to fire a pregnant, white employee named Kelsey Santella, which she declined to do.

---

[1] To resolve the motion, the Court must first determine the material undisputed facts. The Court has limited the facts to those that are undisputed and *material* to the pending summary judgment motion. *See* Fed. R. Civ. P. 56(c) (emphasis added); L.R. 56.1(a). The Court has excluded legal conclusions, argument presented as fact, and proposed facts not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). It has included proposed facts that are material and which have been improperly controverted. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

[2] At some points throughout her briefing, Plaintiff claims Wood also filed retaliation charges against Caduceus, *see, e.g.*, Pl.'s Proposed Facts ¶¶ 94–95, but there is no evidence in the record of this.

In February 2020, Dr. Dawkins came to Kansas City. During this visit, Plaintiff expressed concern that Wood (now fired) had strong contacts and if Wood went to work for a competitor, Caduceus could lose the business she had acquired for them. Dr. Dawkins responded "I'm not at all worried about that. She was worthless." During this visit, Plaintiff alleges coworkers[3] told her that Dr. Dawkins had asked them for "the bad and ugly on [Plaintiff]." Based on her interpretation of that situation, Plaintiff told Human Resources that she felt Dr. Dawkins "doesn't really have a lot of respect for my position here." Plaintiff felt Dr. Dawkins was retaliating against her "because he was mad about . . . [her] sister filing a complaint against the company." But Plaintiff never brought up Wood's complaint against Caduceus to Dr. Dawkins, nor did Dr. Dawkins ever discuss Wood's complaint with Plaintiff.

After that visit, Plaintiff alleges Dr. Dawkins "put some extra demands" on her. Although Plaintiff claims she felt attacked, she acknowledges Dr. Dawkins did not issue her any kind of reprimand, she was never reprimanded while she worked at Caduceus, and her job responsibilities and pay were not reduced.

On February 20, 2020, Sarah Combs emailed Caduceus a "text message" Plaintiff allegedly sent to her own mother, Sharon Smith. The text message states she enjoyed the Caduceus Christmas party after the "Atlanta n*gs" left. There is no admissible evidence in the record of an email or text message from Sarah Combs, and it is unclear who this individual is. There is only a short video of a cellphone with the subject text message on the screen. *See* Video, Ex. G, ECF No. 68. As best the Court can tell from the video, the text message was sent via Facebook Messenger to Sharon Smith. The video does not indicate who sent the message, and Plaintiff denies sending it.

---

[3] At another point in her briefing, Plaintiff alleges a single coworker, Angela Wyatt, told her this. *See* Pl.'s Proposed Fact ¶82.

Dr. Dawkins claims the text message "caused immediate and significant uproar in the Kansas City market," so he asked Grant to investigate who sent it. The parties dispute how this investigation was conducted and/or whether an investigation occurred. Dr. Dawkins claims he was advised Plaintiff gave several different explanations for the text message: (1) she admitted deleting the text message from her phone; (2) she said her son snuck into her home and sent the message without Plaintiff's knowledge; and (3) that someone took control of her phone and sent the text message.

Dr. Dawkins further testified that, "Although I concluded that [Plaintiff] sent the text message, if the investigation had revealed that she had not sent the text message, I still would have terminated her because there would have, in my view, been a racist perception associated with [Plaintiff] that I did not want anyone to attach to my company." Dawkins Decl. ¶4, ECF No. 68-4. Dr. Dawkins believed retaining Plaintiff would have sent a message to Caduceus clients and employees that Caduceus tolerated racist behavior. Dr. Dawkins also stated he was concerned about the different explanations Plaintiff provided regarding the text message. He believed those different explanations raised concerns about Plaintiff's truthfulness and judgment, and he did not want someone with these issues to be the most senior Caduceus employee in Missouri. So, Dr. Dawkins directed Grant to terminate Plaintiff.

Plaintiff was suspended on February 20, 2020, and fired on February 24, 2020. Grant provided no input into the decision as to whether Plaintiff should be terminated, and he was not involved in drafting her termination letter or Separation Notice. Grant testified that the decision to terminate Plaintiff "was made at a higher level about all the factors given at that time[,]" and that the only thing he was provided during that time was performance metrics/data. Grant Dep. 70:8-25, 71:1-7, Ex. B, ECF No. 69. Regarding the text message, Grant testified as follows:

> Q: Well, outside of the metrics of [Plaintiff's] clinics, was there -- do you recall there be [sic] any other issues?
> A: I think there was some type of incident. Somebody sent an email. It was something. Somebody sent something as far as I remember.
> Q: Okay. And you say somebody sent something, but that wasn't [Plaintiff], correct?
> A: No.

*See id.* at 65:3-11. According to Plaintiff, Grant told her he knew she had done nothing wrong, and the text message was a "spoof."

After directing Grant to terminate Plaintiff, Dr. Dawkins was not involved in preparing Plaintiff's Separation Notice or termination letter and did not read either document before they were released. He stated his focus was on removing Plaintiff from his company, and he directed HR that this task be executed; how HR chose to execute that task was not his concern as long as it was successfully accomplished. Plaintiff's Separation Notice, submitted to the Georgia Department of Labor, stated the reason for her termination was performance, but Dr. Dawkins maintains the listed reason was an error because he made it "crystal clear" that Plaintiff was to be terminated for "using a racial slur." Dawkins Dep. at 51:5-8, ECF No. 68-1.

On October 26, 2020, Plaintiff filed discrimination and retaliation charges against Caduceus with the MCHR and EEOC. Plaintiff was issued a right to sue letter, and on February 8, 2021, Plaintiff filed the present lawsuit.

**Discussion**

Plaintiff argues Defendant fired her in retaliation for: (1) her sister, Wood, filing discrimination charges against Caduceus; and (2) refusing to fire Kelsey Santella, a pregnant, white employee. Defendant argues Plaintiff cannot establish a prima facie claim, but even if she could, it presented a legitimate non-discriminatory reason for terminating Plaintiff, and Plaintiff cannot prove pretext. The Court agrees.

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011). "To establish a prima facie case of retaliation, [Plaintiff] must show that: (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Watson v. McDonough*, 996 F.3d 850, 856 (8th Cir. 2021) (internal quotation marks omitted and cleaned up). To establish causation, Plaintiff "must prove the desire to retaliate was the but for cause of her termination—that is, that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of her employer." *Brown v. Kansas City*, No. 4:20-CV-00920-DGK, 2024 WL 189081, at *14 (W.D. Mo. Jan. 17, 2024) (quoting *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013)). If Plaintiff establishes a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for its action. If Defendant does so, the burden shifts back to Plaintiff to provide evidence of pretext. *See Pye*, 641 F.3d at 1021.

Defendant argues Plaintiff failed to establish a prima facie case of retaliation because she cannot prove causation. In response, Plaintiff largely sidesteps the issue of causation by focusing on the fact she satisfied the first element, i.e., she engaged in protected workplace conduct pursuant to *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011). Assuming Plaintiff established causation, Defendant articulated a legitimate nondiscriminatory reason for terminating Plaintiff as Judge Sachs noted. *See* Sachs' Order at 10. Dr. Dawkins articulated three reasons for firing Plaintiff: (1) she sent the text message; (2) she gave different explanations and excuses regarding the text message, which raised concerns about her truthfulness and judgment; and (3) even if the investigation revealed Plaintiff did not send the text message, he believed there were now racist perceptions associated with Plaintiff that he did not want attributed to the business. *See Evance*

*v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013) (finding "it is not unlawful for a company to make employment decisions based upon erroneous information and evaluations." (quoting *Allen v. City of Pocahontas, Ark.*, 340 F.3d 551, 558 n.6 (8th Cir. 2003))). Thus, the burden shifts to Plaintiff to show pretext.

Plaintiff can prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Pye*, 641 F.3d at 1021 (quoting *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1046 (8th Cir. 2010)). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011)).

Plaintiff argues Defendant's given reason was pretextual because there was a discrepancy between Dr. Dawkins' explanation for her termination and the explanations given by Grant and the Separation Notice.[4] This is not enough to establish pretext. There is no dispute here that Dr. Dawkins was solely responsible for the termination decision. His reason for terminating Plaintiff has not waivered, and Plaintiff has failed to present evidence, or even dispute, that Dr. Dawkins was not genuinely motivated by all three of the above reasons. *See Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000) (finding Plaintiff failed to prove pretext because there was "no evidence suggesting anything other than the [employer's] honest belief"); *see also Evance*, 719 F.3d at 678. Plaintiff also questions the investigation, but the Eight Circuit has repeatedly held courts do not sit as "'super-personnel department[s]' with the power to second-guess employers' business decisions." *Evance*, 719 F.3d at 678 (quoting *Russell v. TG Mo. Corp.*, 340 F.3d 735, 746 (8th Cir. 2003) (reiterating this point where plaintiff complained the employer's

---

[4] While Plaintiff mentions her refusal to fire Kelsey Santella, she does not explain how this proves pretext (but the Court doubts Plaintiff has proven this conduct was the but for reason for her termination anyway).

investigation was not thorough and her co-workers' allegations against her were not credible). At bottom, Plaintiff has not put forth facts in the record showing pretext.

## Conclusion

For the foregoing reasons, Defendant's renewed motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date: March 28, 2024 　　　　　　　　　　/s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT